UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

TOPACIO QUINONEZ,

  Plaintiff,

                                   CASE NO.:

-VS-

COMENITY BANK,

  Defendant.

_____/

### COMPLAINT

      COMES NOW Plaintiff, Topacio Quinonez, by and through the undersigned counsel, and sues Defendant, Comenity Bank (hereinafter "Comenity"), and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

### INTRODUCTION

      1.    The TCPA was enacted to prevent companies like Comenity from invading American citizen's privacy and prevent abusive "robo-calls."

      2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

      3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give

telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4.      According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." <u>Fact Sheet:  Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones</u>, Federal Communications Commission, (May 27, 2015), <u>http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf</u>.

## JURISDICTION AND VENUE

5.      This is an action for damages exceeding Fifteen Thousand Dollars ($15,000.00) exclusive of attorney fees and costs.

6.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

7.      The alleged violations described in the Complaint occurred in Miami-Dade County, Florida.

## FACTUAL ALLEGATIONS

8.      Plaintiff is a natural person, and citizen of the State of Florida, residing in Miami-Dade County, Florida

9.      Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

10.     Plaintiff is an "alleged debtor."

11.     Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

12.     The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

13.     Comenity is a FDIC insured bank with its principal place of business at One Righter Parkway, Suite 100, Wilmington, DE 19803 and conducting business in the State of Florida.

14.     Comenity called Plaintiff approximately one thousand five hundred (1,500) times since January 1, 2015, in an attempt to collect a debt.

15.     Comenity attempted to collect a debt from Plaintiff by this campaign of telephone calls.

16.     Comenity intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day and on back to back days, with such frequency as can reasonably be expected to harass.

17.     On information and belief, the telephone calls were placed using automated telephone dialing equipment, without human intervention

18.     Each call Comenity made to Plaintiff was made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line.

19.     Each call Comenity made to Plaintiff's cell phone was done so without the "express permission" of Plaintiff.

20.     Beginning on or around January 1, 2015, Plaintiff began receiving automated calls to her cellular telephone (***) ***-2700 from Comenity in an attempt to collect a debt.

21.     On several occasions Plaintiff would answer and speak to live agents of Comenity instructing them to stop calling her cellular telephone, however her pleas were futile as the calls continued.

22.     On November 25, 2015 at 8:03 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Sabrina," who asked to speak to Plaintiff's mother, Plaintiff requested that Comenity cease calling her cell phone and hung up.

23.     On November 25, 2015 at 8:32 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Mr. Redman," who asked to speak to Plaintiff's mother, Plaintiff requested that Comenity cease calling her cell phone and hung up.

24.     On November 25, 2015 at 8:37 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Daniel" who asked to speak to Plaintiff's mother, Plaintiff requested that Comenity cease calling her cell phone and hung up.

25.     On November 25, 2015 at 8:38 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Jessy" who asked to speak to Plaintiff's mother, Plaintiff requested that Comenity cease calling her cell phone and hung up.

26.     On November 25, 2015 at 11:26 AM Plaintiff answered a call from Comenity where an agent known only as "Christal" began speaking Spanish, to which Plaintiff requested that Comenity cease calling her cell phone and hung up.

27.     On November 27, 2015 at 8:36 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Sharell" who asked to speak to Plaintiff, to which Plaintiff requested that Comenity cease calling her cell phone and hung up.

28.     On November 27, 2015 at 9:36 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Stacy" who asked to speak to Plaintiff, to which Plaintiff requested that Comenity cease calling her cell phone and hung up.

29.     On November 27, 2015 at 10:01 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Luis" who asked to speak to Plaintiff, to which Plaintiff requested that Comenity cease calling her cell phone and hung up.

30.     On November 28, 2015 at 8:20 AM Plaintiff answered a call from Comenity and spoke to an agent known only as "Luis" who asked to speak to Plaintiff, to which Plaintiff requested that Comenity cease calling her cell phone and hung up.

31.     Due to the tremendous volume of calls received to her cellular telephone from Comenity, Plaintiff was not able to properly catalogue each and every call, however attached hereto as Exhibit "1" is a list of some of the calls she was able to notate.

32.     Comenity has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

33.     Comenity has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or Comenity, to remove the number.

34.     Comenity's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to Comenity that they wish for the calls tos top.

35.     Comenity has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

36.     In 2014, Comenity had an approved settlement of $8.5 million over a class action that they autodialed four (4) million people in violation of the Telephone Consumer Protection Act from August 2010 to May 26, 2014 (See Attached Exhibit "2").

37.     Comenity has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite being requested to stop.

38.     A very small sampling of online complaints regarding one of the numbers Comenity autodialed Plaintiff from, 720-456-3687, is attached hereto as Exhibit "3."

39.     A very small sampling of online complaints regarding one of the numbers Comenity autodialed Plaintiff from, 614-729-6086, is attached hereto as Exhibit "4."

40.     Comenity's corporate policy provided no means for Plaintiff to have her number removed from the call list.

41.     Comenity has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

42.     Plaintiff did not expressly consent to Comenity's placement of telephone calls to Plaintiff's cellular telephone by the use of an automatic telephone dialing system or a pre-recorded or artificial voice prior to Comenity's placement of the calls.

43.     Not a single call placed by Comenity to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

44.     Comenity willfully and/or knowingly violated the TCPA with respect to Plaintiff.

## COUNT I
### (Violation of the TCPA)

45.     Plaintiff incorporates above paragraphs one (1) through forty-four (44) herein.

46.     Defendant willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant that Plaintiff wished for the calls to cease.

47.     Comenity repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

6

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Comenity for statutory damages, punitive damages, actual damages, costs, interest, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

48.     Plaintiff incorporates above paragraphs one (1) through forty-four (44) herein.

49.     At all times relevant to this action Comenity is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

50.     Comenity has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

51.     Comenity has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

52.     Comenity's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Comenity for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Octavio Gomez
Octavio "Tav" Gomez, Esquire
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin St., Suite 700
Tampa, FL 33602
Tele:(813) 223-5505
Fax: (813) 223-5402
TGomez@forthepeople.com
Florida Bar: 0338620
Attorney for Plaintiff